# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

| | |
|---|---|
| JACK THOMPSON, Individually and for Others Similarly Situated, | Case No. 3:19-cv-00127 |
| Plaintiffs, | Jury Trial Demanded |
| v. | FLSA Collective Action |
| ALLIED STAFF AUGMENTATION PARTNERS, INC., | |
| Defendant. | |

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT
## OF MOTION FOR NOTICE AND JOINDER

---

**Andrew W. Dunlap**
Texas Bar No. 24068647
*(Admitted Pro Hac Vice)*
**Richard M. Schreiber**
Texas Bar No. 24056278
*(Admitted Pro Hac Vice)*
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 325-1100
Fax: (713) 325-3300
adunlap@mybackwages.com
rschreiber@mybackwages.com

**Christopher Strianese**
NC Bar No. 46918
**Tamara Huckert**
NC Bar No. 35348
**STRIANESE HUCKERT, LLP**
3501 Monroe Rd.
Charlotte, NC 28205
Tel: 704-966-2101
chris@strilaw.com
tamara@strilaw.com

# TABLE OF CONTENTS

A.    BOTTOM LINE UP FRONT ................................................................................1

B.    PROCEDURAL HISTORY .................................................................................1

C.    ARGUMENT & AUTHORITIES ........................................................................2

      1.    This Court Utilizes Notice and Joinder in FLSA Cases.................................2

            1.1    A Plaintiff Satisfies His Burden by Demonstrating a Common Policy or Practice. ...............................................................................................3

      2.    Thompson Demonstrates ASAP Has a Common Policy of Paying Similarly-Situated Employees Straight Time for Overtime. ............................................3

            2.1    Thompson and the Opt-In Plaintiffs Allege ASAP Paid Them and Similarly-Situated Employees Straight Time for Overtime. ...........................4

            2.2    ASAP Previously Paid Overtime in Accordance with the FLSA. .............4

            2.3    ASAP's Own Records Indicate It Paid Thompson and Similarly-Situated Employees Straight Time for Overtime. .......................................5

            2.4    ASAP's Pay Practice Also Fails Because It Cannot Satisfy the Reasonable Relationship Test. .........................................................................9

      3.    ASAP Has Stonewalled Thompson's Ability to Meet the December 13, 2019 Joinder Deadline the Court Set on October 31, 2019...................................12

      4.    The Court Should Approve Thompson's Notice and Notice Procedure...................14

D.    CONCLUSION.. ...........................................................................................16

i

# TABLE OF AUTHORITIES

**Cases**

*Anani v. CVS RX Servs., Inc.*,
   788 F. Supp. 2d 55 (E.D.N.Y. 2011) ........................................................................................10

*Blaney v. Charlotte-Mecklenburg Hosp. Authority*,
   2011 WL 4351631 (W.D.N.C. Sept. 6, 2011) .......................................................................12

*Brock v. Claridge Hotel & Casino*,
   846 F.2d 180 (3d Cir. 1988) ................................................................................................10

*Geiger* et al. *v. H.H. Franchising Sys., Inc.*,
   No. 3:17-cv-738-FDW (W.D.N.C. Nov. 27, 2018) ...........................................................passim

*Hoffman-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989) .............................................................................................................13

*Karna v. BP Corp. North Am., Inc.*,
   2013 WL 1155485 (S.D. Tex. Mar. 19, 2013) .....................................................................12

*Link v. Wabash R.R. Co.*,
   370 U.S. 626 (1962) ...............................................................................................................1

*McCoy v. RP, Inc.*,
   2015 WL 6157306 (D.S.C. Oct. 19, 2015) ..........................................................................12

*Moseman v. U.S. Bank, N.A.*,
   No. 3:17-cv-481-FDW-DCK (W.D.N.C. June 12, 2018) .................................................passim

*Park v. FDM Grp. Inc.*,
   2019 WL 2205715 (S.D.N.Y. May 22, 2019) ......................................................................10

**Statutes**

29 U.S.C. § 216(b) .............................................................................................................................3

**Rules**

Fed. R. Evid. 407 .............................................................................................................................12

**Regulations**

29 C.F.R. § 541.604(b)..................................................................................................................10

69 Fed. Reg. 184........................................................................................................................10

**Other Authorities**

Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales
    and Computer Employees, 69 Fed. Reg. 22122 (Apr. 23, 2004).........................................10

Opinion Letter Fair Labor Standards Act (FLSA),
    2018 WL 5921453 (DOL Nov. 8, 2018) .............................................................................10

## A.   BOTTOM LINE UP FRONT

Thompson files this Motion for Notice and Joinder in accordance with the Court's procedures. Thompson requests the Court authorize notice to similarly-situated employees that were subjected to ASAP's straight time for overtime pay policy and order ASAP to produce the contact information to do so. ASAP admits Thompson and similarly-situated employees are paid in the same manner (straight time for overtime). However, ASAP has utilized every opportunity to obstruct this litigation and the Court's inherent power "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962).

Consistent with the Court's precedent, notice and joinder is appropriate to the similarly-situated ASAP employees paid straight time for overtime for the reasons articulated below.

## B.   PROCEDURAL HISTORY

Thompson filed this lawsuit on March 14, 2019, alleging ASAP violated the FLSA by paying him and similarly-situated workers the same hourly rate for all hours worked, including those hours in excess of 40 in a single workweek (straight time for overtime). Doc. 1; *see also* Doc. 13.

On July 1, 2019, Thompson filed a Motion for Conditional Certification, requesting the court authorize him to send notice to similarly-situated employees. Doc. 21.

On August 15, 2019, Thompson filed a Motion for Protective Order, asking the Court to cure ASAP's improper and misleading communications with similarly-situated employees via its dissemination of post-lawsuit arbitration agreements to these workers that attempted to extinguish their right join this (or any other) collective action. Doc. 26. Specifically, Thompson asked the Court to issue a protective order prohibiting ASAP from further after-the-fact arbitration agreements, issue a corrective notice to these workers, and void any arbitration agreements ASAP obtained through these improper communications. *Id.*

- 1 -

On October 31, 2019, this Court declined to conditionally certify Thompson's proposed collective and declined to "express an opinion at th[at] juncture on the notice or notice process[.]" Doc. 41, at *4.

On November 1, 2019, mindful of the Court's certification-denial, Thompson filed a Motion to Compel ASAP to respond to discovery. Doc. 42. Specifically, Thompson requested the Court compel ASAP to produce class data, including contact information, and respond to Interrogatory No. 6 related to ASAP's purported exemption defense. *Id.*

On November 5, 2019, Magistrate Keesler, relying solely on this Court's recent certification-denial, denied Thompson's Motion for Protective Order. Doc. 43.

On November 27, 2019, also relying solely on this Court's recent certification-denial denied Thompson's Motion to Compel as it related to Thompson's request for class data. Doc. 49. Thompson has since filed objections to both of Magistrate Keesler's Orders that are currently pending in the Court. Docs. 47 and 52.

Now, with the numerous admissions by ASAP and discovery produced to date, Thompson moves for notice and joinder pursuant to the Court's practices.

## C.    ARGUMENT & AUTHORITIES

### 1.    This Court Utilizes Notice and Joinder in FLSA Cases.

The Court generally does not "conditionally certify" a collective because "it is not required by the FLSA, the Supreme Court, or the Fourth Circuit." *See, e.g.*, *Geiger et al. v. H.H. Franchising Sys., Inc.*, No. 3:17-cv-738-FDW, Doc. 76, at *3 (W.D.N.C. Nov. 27, 2018) (Whitney, J.) (declining to "conditionally certify" a collective); *Moseman v. U.S. Bank, N.A.*, No. 3:17-cv-481-FDW-DCK, Doc. 33, at *3 (W.D.N.C. June 12, 2018) (Whitney, J.) (declining to "conditional certify" a collective). Indeed, the Court has explained that it "does not believe the term 'conditional certification' embodies

the discretionary case management involvement permitted under 29 U.S.C. § 216(b)." *Id.* Rather, this Court uses the notice and joinder approach. *See, e.g., id.* (allowing notice to be sent to similarly-situated employees for purposes of joinder).

### 1.1 A Plaintiff Satisfies His Burden by Demonstrating a Common Policy or Practice.

To satisfy his burden for notice and joinder, a plaintiff must demonstrate a "common policy or practice by the [defendant]." *H.H. Franchising Sys., Inc.*, No. 3:17-cv-738-FDW, Doc. 76, at *3 (allowing notice to be sent to the proposed collectives because "Plaintiff has made a sufficient showing[,]" as "Plaintiff has plead, attested to facts, and filed documentation supporting a plausible FLSA claim on behalf of similarly situated plaintiffs"); *Moseman*, No. 3:17-cv-481-FDW-DCK, Doc. 33, at *2 (allowing notice to be sent to the proposed collectives because "Plaintiff has made a sufficient showing[,]" as "Plaintiff has plead, attested to facts, and filed documentation supporting a plausible FLSA claim on behalf of similarly situated plaintiffs").

### 2. Thompson Demonstrates ASAP Has a Common Policy of Paying Similarly-Situated Employees Straight Time for Overtime.

To start, ASAP **admits** it pays similarly-situated workers in the same manner as Thompson—straight time for overtime, albeit ASAP has a different way of phrasing its illegal pay policy. *See, e.g.,* Doc. 19, at ¶ 29 (admitting ASAP paid Thompson "a non-overtime hourly rate for hours worked over 40"); Doc. 22, at 1 (admitting these workers, like Thompson, received an "hourly premium" for all hours worked, including overtime hours). Crafty phrasing aside, the substance remains the same—ASAP pays Thompson and other similarly-situated workers the same hourly rate for all hours worked, including those in excess of 40 hours in a single workweek. Indeed, ASAP's only alleged defense to Thompson's allegations is that these workers were exempt and paid a minimum $500 guarantee. *Id.* But ASAP's purported "salary" is merely a pretext that is easily refuted by its own records

- 3 -

demonstrating that these workers were, in fact, paid straight time for overtime. Accordingly, because these similarly-situated employees were victims of a "common policy," the Court should authorize Thompson to send notice to these workers as allowed in *H.H. Franchising* and *Moseman*. *See, e.g.*, No. 3:17-cv-738-FDW, Doc. 76, at *3; No. 3:17-cv-481-FDW-DCK, Doc. 33, at *2.

### 2.1 Thompson and the Opt-In Plaintiffs Allege ASAP Paid Them and Similarly-Situated Employees Straight Time for Overtime.

Thompson and the Opt-in Plaintiffs alleged ASAP paid them and similarly-situated employees the same hourly rate for all hours worked—regardless of the number of hours they worked in a workweek. Exhibit 1 (Thompson Declaration), at ¶¶ 4, 8-9; Exhibit 2 (Carter Declaration), at ¶¶ 4, 8-9; Exhibit 3 (Black Declaration), at ¶¶ 4, 8-9; Exhibit 4 (DeMaria Declaration), at ¶¶ 4, 8-9; Exhibit 5 (Addis Declaration), at ¶¶ 4, 8-9. When Thompson and the Putative Class Members worked over 40 hours in a week, ASAP paid them for these overtime hours at their regular hourly rate. Doc. 21-1, at ¶¶ 4, 8; Doc. 21-2, at ¶ 8; Doc. 21-3, at ¶¶ 4, 8; Doc. 21-4, at ¶¶ 4, 8; Doc. 21-5, at ¶¶ 4, 8-9.

### 2.2 ASAP Previously Paid Overtime in Accordance with the FLSA.

Indeed, Thompson is fully aware that ASAP pays him straight time for overtime because, ironically, ASAP used to pay Thompson overtime in accordance with the FLSA:

---

**EMPLOYMENT AGREEMENT**

THIS AGREEMENT, made on 2/11/14, between, Jack A. Thompson (hereinafter called "EMPLOYEE") and ALLIED STAFF AUGMENTATION PARTNERS, INC. (hereinafter called "COMPANY").

WHEREAS, COMPANY desires to employ EMPLOYEE for work to be performed at Duke Energy (hereinafter called "CLIENT"); and WHEREAS, EMPLOYEE has been employed by the COMPANY, THE PARTIES AGREE AS FOLLOWS:

1.EMPLOYEE shall tentatively report for work at CLIENT on 2/17/14, provided that EMPLOYEE passes all of CLIENT'S security and background screening procedures.

2. COMPANY will pay EMPLOYEE at a package rate of $47.94 per hour effective on the day that EMPLOYEE reports for work at CLIENT. , Overtime will be paid at the rate of $71.91 per hour for all hours worked in excess of forty (40) in any one week. EMPLOYEE agrees that time card records of COMPANY or CLIENT shall be conclusive as to the time worked by EMPLOYEE. If EMPLOYEE fails to work on any day, he shall not be entitled to any compensation for time not worked.

---

Exhibit 6 (Thompson's 2014 Employment Agreement with ASAP).

- 4 -

### 2.3 ASAP's Own Records Indicate It Paid Thompson and Similarly-Situated Employees Straight Time for Overtime.

If ASAP is to be believed that it truly paid Thompson and similarly-situated employees a $500 minimum guaranteed salary, which is ultimately a merits based issue to be considered after discovery is complete, these workers' pay records would demonstrate two tracks: (1) their $500 minimum paid out for 40 hours at a rate of $12.50, as ASAP's offer letters contend; and (2) their purported "hourly premium" paid at the same rate for all hours worked. But that is not the case. Rather, **no separate salary** is evidenced from these workers' pay records, regardless of whether they work more or fewer than 40 hours in a week:

| Type | Units | Pay Rate |
|---|---|---|
| Reg | 10.00 | $60.66 |
| Per Diem Taxable | 1.00 | $100.00 |

| Type | Units | Pay Rate |
|---|---|---|
| Reg | 40.00 | $60.66 |
| OT | 34.00 | $60.66 |

*See, e.g.*, Exhibit 7 (Thompson Pay Records). This is because these workers were not *actually* guaranteed a minimum salary, but rather were hourly employees paid straight time for overtime:



*See, e.g.*, Exhibit 8 (Webb Employment Terms Breakdown Sheets); Exhibit 9 (Carter Employment Terms Breakdown Sheets); Exhibit 10 (Thompson Employment Terms Breakdown Sheet). Tellingly, ASAP's overtime bill rates were not 150% of its straight time bill rates:

- 5 -

| Billing Rate: | | Billing Rate: | |
|---|---|---|---|
| ST Bill Rate: | $ 79.73 | ST Bill Rate: | $ 80.15 |
| OT Bill Rate: | $ 78.18 | OT Bill Rate: | $ 80.15 |

| Billing Rate: | | Billing Rate: | |
|---|---|---|---|
| ST Bill Rate: | $ 79.73 | ST Bill Rate: | $ 62.98 |
| OT Bill Rate: | $ 78.18 | OT Bill Rate: | $ 62.98 |

*See, e.g.*, Ex 8; Ex. 9.

Moreover, when assigning these workers to projects, reducing their pay, or increasing their pay, ASAP **only** informs them of the hourly rate:

Dear Mr. Webb;

As per our conversation today, Duke Energy Nuclear Management has decided to review rates for contingent workers in order to assess compliance with internal rate guidelines. Based on their review, it has been determined that your hourly rate for your current assignment will need to be reduced to $67.69.

*Hi James*

*Congratulations!* We are pleased to inform you that you have been awarded a pay increase and assignment extension with Duke Energy effective 07/04/2016.

Your assignment information will reflect the following updates:

- Effective Date:                    07/04/2016
- Increase Percent:               2%
- New Straight Time Hourly Rate:     $71.40
- New Overtime Hourly Rate:          $71.40
- New Current Assignment End date: 06/30/2017

PLEASE CONFIRM ACCEPTANCE OF THE ABOVE VIA EMAIL REPLY

We are very grateful for all your efforts as a representative of our company, and look forward to continuing our mutually beneficial association with you for a long time to come. Please feel free to call on us whenever we may be of service.

Thank You!
*Whittney*

- 6 -

Dear James

As per our conversation today, Duke Energy Nuclear Management has decided to review rates for contingent workers in order to assess compliance with internal rate guidelines. Based on their review, it has been determined that <mark>your hourly rate for your current assignment will need to be reduced to</mark> _____ **$62.00** _____.

**The rate change will become effective Monday, July 3, 2017.**

*Congratulations!* We are pleased to inform you that you have been awarded a pay increase and assignment extension with Duke Energy effective 07/04/2016.

Your assignment information will reflect the following updates:

- **Effective Date:**                 07/04/2016
- **Increase Percent:**             2%
- **New Straight Time Hourly Rate:**     **$72.83**
- **New Overtime Hourly Rate:**          **$72.83**
- **New Current Assignment End date: 06/30/2017**

PLEASE CONFIRM ACCEPTANCE OF THE ABOVE VIA EMAIL REPLY

We are very grateful for all your efforts as a representative of our company, and look forward to continuing our mutually beneficial association with you for a long time to come. Please feel free to call on us whenever we may be of service.

Thank You!
*Whittney*

*See, e.g.*, Exhibit 11 (Webb Rate Reduction Email); Exhibit 12 (Carter Rate Increase Email); Exhibit 13 (Carter Rate Reduction Email); Exhibit 14 (Webb Rate Increase Email). This is because they are hourly employees. Indeed, their hourly rates are "non-negotiable."

- 7 -

Dear Jack,

As per our conversation today, Duke Energy Nuclear Management has decided to review rates for contingent workers in order to assess compliance with internal rate guidelines. Based on their review, it has been determined that your hourly rate for your current assignment will need to be reduced to $ 60.66 /hr.

The rate change will become effective Monday, July 9, 2017.

With acceptance of the rate change, Duke Energy would also like to extend your assignment through 06/30/2018.

Please note:
- Nuclear Generation contingent worker rates have drifted upward over the years to levels that are no longer consistent with internal guidelines for the contingent worker skillsets.
- These rate reductions are not reflective of poor performance.
- *Rates should never be discussed with other contingent workers or with Duke managers.*
- All discussions should be handled directly with you and your employer ASAP.
- Rates are non-negotiable.

We appreciate your support and partnership.

Please confirm your acceptance or rejection of the new pay rate by EOD Wednesday, June 7, 2017 via email.

*See*, *e.g.*, Exhibit 15 (Thompson Rate Reduction Email). This is because ASAP does not negotiate or guarantee any minimum salary for these workers. Rather, ASAP only negotiates and guarantees a straight time rate and an overtime rate that are the **same,** as well as a straight time bill rate and overtime bill rate that are also the **same**:

Hi Cat,

After speaking with Stanley, Allied Staff Augmentation Partners, Inc. proposes the following employment terms for his services:

$55.00 - Straight Time Pay Rate
$55.00 - Overtime Pay Rate
$62.98 - Straight Time Bill Rate
$62.98 - Overtime Bill Rate
$00.00 - Per Diem
$00.00 - Mob/demob expenses
10/21/13 - Availability Date

Please let me know if you have questions or need any additional information.

Thanks for your business!

Fred Simmons
ASAP, Inc.

- 8 -

*See, e.g.*, Exhibit 16 (ASAP Emails Negotiating Employment Terms). And the entities to which ASAP supplies these workers makes ASAP's pay structure abundantly clear—they "are only paid for hours worked" and "[t]here is **no guarantee of hours**" or salary.

| What are contingent workers paid for? | You are only paid for hours worked – round to the nearest 15 minutes, which is .25/.50/.75 in MyTime. There is no guarantee of hours. |
|---|---|

Exhibit 17 (Duke Energy Contingent Worker FAQ). This is further demonstrated by Thompson and the similarly-situated employees' pay records. Their pay moved lockstep with the hours worked. If Thompson and the similarly-situated employees worked under 40 hours, they were only paid for the hours worked. Exhibit 18 (Thompson Exemplar Paystubs Under 40 Hours).

There can be no doubt that ASAP paid these workers straight time for overtime, and the Court need look no further than ASAP's own records which illuminate the same. Accordingly, Thompson has demonstrated a "common policy" that is a *per se* violation of the FLSA, which warrants Court authorized notice to similarly-situated employees who were likewise paid under ASAP's straight time for overtime pay scheme. *See, e.g., H.H. Franchising Sys., Inc.*, No. 3:17-cv-738-FDW, Doc. 76, at *3; *Moseman*, No. 3:17-cv-481-FDW-DCK, Doc. 33, at *2.

### 2.4 ASAP's Pay Practice Also Fails Because It Cannot Satisfy the Reasonable Relationship Test.

ASAP claims it paid Thompson and similarly-situated employees under a "salary plus hourly" plan that does not violate the FLSA. *See* Doc. 22, at 6. But ASAP's purported "salary" does not satisfy the salary basis test required for any white-collar exemption under the FLSA. Indeed, courts and the Department of Labor are clear that "[j]ust as dressing a mannequin up in a skirt and blouse does not transform it into a woman, so too masquerading an hourly employee's compensation as a guaranteed

- 9 -

salary plus hour-based bonuses does not transform the compensation scheme into a salary-based plan." *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 183 (3d Cir. 1988).

Where employees receive both an alleged salary and compensation on an "hourly, daily, or shift basis[,]" the employee qualifies as salaried only "if two conditions are met." *Park v. FDM Grp. Inc.*, 2019 WL 2205715, at *4 (S.D.N.Y. May 22, 2019) (citing 29 C.F.R. § 541.604(b)). "First, the employee must be guaranteed at least $455 per week on a salary basis; **and second**, there must be a reasonable relationship between the employee's weekly guarantee and the employee's usual weekly earnings." *Id.* (emphasis added).[1]

The reasonable relationship requires the "weekly guarantee" to be "roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." 29 C.F.R. § 541.604(b). A "1.5-to-1 ratio of actual earnings to guaranteed weekly salary is a 'reasonable relationship' under the regulations." Opinion Letter Fair Labor Standards Act (FLSA), 2018 WL 5921453, at *2 (DOL Nov. 8, 2018) (citing 29 C.F.R. § 541.604(b)); *see also* Ex. 1, Dep't of Labor, Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004) ("if a nurse whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200."). And a ratio of 1.8 to 1 "materially exceeds the permissible ratios." Opinion Letter, 2018 WL 5921453, at *2.

The ratios here are dramatically higher. Even for just a 40-hour workweek, their actual earnings are approximately 5 times greater than their $500 "salary." And these employees regularly work

---

[1] The reasonable relationship requirement ensures "the salary guarantee for [employees whose actual pay is computed on an hourly, shift or daily basis] is a meaningful guarantee rather than a mere illusion." *Anani v. CVS RX Servs., Inc.*, 788 F. Supp. 2d 55, 65–66 (E.D.N.Y. 2011), aff'd, 730 F.3d 146 (2d Cir. 2013) (citing DOL Final Rules, 69 Fed. Reg. at 22,184).

overtime. *See* Ex. 1, at ¶ 7; Ex. 2, at ¶ 7; Ex. 3, at ¶ 7; Ex. 4, at ¶ 7; Ex. 5, at ¶ 7; *see also* Exhibit 19 (Thompson Exemplar Paystubs Over 40 Hours). The overtime hours further increase the ratio beyond any permissible tolerance (to nearly 10 to 1). Indeed, a mere review of how these employees pay fluctuated dependent **on the number of hours they worked** makes clear they were not paid on a salary basis:





Accordingly, even if ASAP paid these workers a $500 minimum "salary," such a pay structure fails the reasonable relationship test. Thus, ASAP's pay structure—which ASAP admits is uniform—violates the FLSA.

- 11 -

### 3. ASAP Has Stonewalled Thompson's Ability to Meet the December 13, 2019 Joinder Deadline the Court Set on October 31, 2019.

From day one of this action, ASAP has impermissibly restricted Thompson's ability to inform similarly-situated workers of their right to join this action, including by usurping this Court's authority to determine who can join. These bad acts necessitate the Court's involvement to facilitate the broad remedial purposes of the FLSA.

Indeed, shortly after Thompson filed this lawsuit, ASAP began improperly communicating with similarly-situated employees that it paid straight time for overtime by disseminating new employment agreements to these workers that conspicuously contained an arbitration agreement with a class and collective action waiver clause. *See* Doc. 26-3. Only after this suit was filed did ASAP change its straight time for overtime pay scheme and began paying these similarly-situated employees overtime.[2]

> 2. COMPANY will pay EMPLOYEE an hourly rate of _____. **EMPLOYEE is non-exempt from the Fair Labor Standards Act's (FLSA) overtime requirements. Thus, EMPLOYEE will be paid overtime for all hours worked over forty hours in the workweek.**

*Id.* Importantly, ASAP made an illusory promise to these workers that it would finally begin paying them overtime in accordance with the FLSA in order to convince these workers to waive their right to join this collective action (about which ASAP failed to inform any of these workers) or even pursue their claims outside of individual arbitration. *See* Doc. 26-2, at ¶ 2. ASAP's improper and misleading communication (or rather, ASAP's fraudulent misrepresentation) induced numerous

---

[2] An employer's attempts to comply with the FLSA by changing its policies after an FLSA lawsuit has been filed is evidence of the employer's view that its prior policy may not have been compliant with the FLSA. *See, e.g.*, *Karna v. BP Corp. North Am., Inc.*, 2013 WL 1155485, at *12 (S.D. Tex. Mar. 19, 2013) (noting where an employer subsequently creates an employee position to replace a contractor position occupied by a worker in order to comply with the FLSA, this is evidence the employer viewed the worker as independent and the prior classification as not compliant with the FLSA). While such evidence is likely inadmissible at trial under Fed. R. Evid. 407 as a subsequent remedial measure, *see, e.g.*, *Blaney v. Charlotte-Mecklenburg Hosp. Authority*, 2011 WL 4351631, at *9-10 (W.D.N.C. Sept. 6, 2011), evidence need not be admissible at this stage, *see, e.g.*, *McCoy v. RP, Inc.*, 2015 WL 6157306, at *3 (D.S.C. Oct. 19, 2015) (evidence need not be admissible at notice stage).

similarly-situated workers into executing arbitration agreements. Further, ASAP has refused to respond to discovery regarding the same. *See* Exhibit 20 (ASAP's Supplemental Reponses to Thompson's First Set of Requests for Production), as Responses to Request for Production Nos. 6 and 17; Exhibit 21 (ASAP's Responses to Thompson's Second Set of Discovery), at Response to Interrogatory No. 17 and Response to Request for Production No. 41.

Likewise, when Thompson attempted to discover information about and the identities of similarly-situated employees, ASAP refused to participate in discovery that is notoriously routine in FLSA cases such as this. *See generally* Docs. 42, 48, and 52. Indeed, while ASAP continues to benefit from its misleading and improper communications with similarly-situated employees, these workers are prejudiced by ASAP barricading them from learning about their rights regarding ASAP's (now changed) straight time for overtime pay scheme.

Moreover, Thompson has even attempted to obtain this information from the entity ASAP provided these similarly-situated workers, Guidant. But Guidant, conveniently, has also refused to provide any information about these workers, and Thompson is currently in the process of compelling the same.

There can be no doubt that Thompson made every attempt to advance this case, and ASAP used every trick in the book to obstruct the same. This is precisely what the Supreme Court emphasized in *Hoffman-La Roche Inc. v. Sperling*—court-authorized notice protects against misleading communications (like ASAP's) and ensures the joinder of additional parties is accomplished properly, efficiently, and fairly. *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-72 (1989). Accordingly, ASAP's improper communications with similarly-situated employees and its obstruction of these employees' ability to exercise their right to assert their FLSA claims necessitates this Court authorize Thompson to send notice to these employees, informing them of their right to join this action.

## 4. The Court Should Approve Thompson's Notice and Notice Procedure.

Thompson requests the Court authorize him to send his proposed Notice and Consent Forms, attached as Exhibits 22 and 23, respectively, to similarly-situated employees, informing them of their right to join this action. This Court has approved virtually identical notices. *See, e.g.*, *H.H. Franchising Sys., Inc.*, No. 3:17-cv-738-FDW, Doc. 76, at *4-5 (approving plaintiff's proposed notice, Doc. 69-E, with minimal modifications).

### Approved[3] H.H. Franchising Notice:

**NOTICE OF COLLECTIVE ACTION LAWSUIT**

TO: ALL IN-HOME CAREGIVER EMPLOYEES EMPLOYED BY H.H. FRANCHISING SYSTEMS, INC., d/b/a HOME HELPERS and/or GLENKAT, INC. IN NORTH CAROLINA

**INTRODUCTION**

A lawsuit, captioned *Roseann Geiger and Sherri Holly, individually and on behalf of others similarly situated v. H.H. Franchising Systems, Inc., d/b/a/ Home Helpers, a foreign corporation; Glenkat, Inc.; Kathleen Holden, an individual and Glenn Holden, an individual,* has been filed in the United States District Court for the Western District of North Carolina, Case No. 3:17-cv-00738-FDW-DSC. Plaintiffs Roseann Geiger[1] ("Geiger") and Sherri Holley ("Holley") filed this lawsuit on behalf of themselves and all current and former in-home caregiver employees who are or have been employed by H.H. Franchising Systems, Inc. d/b/a Home Helpers and/or Glenkat, Inc. (collectively, "Home Helpers") and working in North Carolina. Plaintiffs allege Home Helpers violated the Fair Labor Standards Act ("FLSA") by failing to pay minimum wage for all hours worked during 24-hour or overnight shifts and by failure to pay overtime for hours worked in excess of 40 hours per work week. You are

receiving this Notice because you may be "similarly situated" to Plaintiffs and may be eligible to join this lawsuit. This letter advises you how this lawsuit may affect your rights and instructs you on how to join if you choose.                              4

**DESCRIPTION OF THE LAWSUIT**

On December 24, 2017, Geiger and Holley filed this lawsuit alleging Home Helpers violated the FLSA by failing to correctly pay overtime wages for all hours worked over 40 in a workweek. They asked the Court to order Home Helpers to pay theirs and anyone else who joins this lawsuit, unpaid regular and overtime wages, statutory penalties, attorneys' fees and costs. As noted above, the claims of Geiger have been compelled to arbitration. This notice is being served on behalf of Plaintiff Holley only.

### Thompson's Proposed Notice:

**NOTICE OF COLLECTIVE ACTION LAWSUIT**

TO: ALL CURRENT OR FORMER EMPLOYEES OF ALLIED STAFF AUGMENTATION PARTNERS, INC. (ASAP) THAT WERE PAID THE SAME HOURLY RATE FOR ALL HOURS WORKED (STRAIGHT TIME FOR OVERTIME)

**INTRODUCTION**

A lawsuit captioned *Jack Thompson, Individually and for Others Similarly Situated v. Allied Staff Augmentation Partners, Inc.*, has been filed in the United States District Court for the Western District of North Carolina, Case No. 3:19-cv-00127-FDW-DCK. Plaintiff Jack Thompson (Thompson) filed this lawsuit on behalf of himself and all current and former employees of Allied Staff Augmentation Partners, Inc. (ASAP) who were paid the same hourly rate for all hour worked (straight time of overtime). Mr. Thompson alleges ASAP violated the Fair Labor Standards Act (FLSA) by failing to pay overtime for hours worked in excess of 40 hours per workweek. You are receiving this Notice because you may be "similarly situated" to Mr. Thompson and may be eligible to join this lawsuit. This letter advises you how this lawsuit may affect your rights and instructs you on how to join if you choose.

**DESCRIPTION OF THE LAWSUIT**

On March 14, 2019, Mr. Thompson filed this lawsuit alleging ASAP violated the FLSA by failing to correctly pay overtime for all hours worked over 40 hours in a workweek. They asked the Court to order ASAP to pay his and anyone else who joins this lawsuit unpaid overtime wages, statutory penalties, attorneys' fees and costs. ASAP denies that any employee was not properly paid overtime wages. ASAP contends all employees were properly paid under the Fair Labor Standards Act and that ASAP acted in good faith. ASAP contests any liability as alleged by Mr. Thompson.

---

[3] The Court ordered plaintiff to modify the "TO" and "Who Can Join This Lawsuit" Sections based on the limitations the Court imposed on the similarly-situated employees to which the Court authorized notice be sent. *H.H. Franchising Sys., Inc.*, No. 3:17-cv-738-FDW, Doc. 76, at *4-5. Further, the Court ordered plaintiff to add defendants' position in the "Description of the Lawsuit" section. *Id.* Thompson has added ASAP's position to his description. *See* Ex. 22.

[4] The only different between the Introduction Section in *H.H. Franchising* and Thompson's Proposed Notice is a footnote discussion of one plaintiff's claims defendant successfully compelled to arbitration that are not relevant to this case. *See H.H. Franchising Sys., Inc.*, No. 3:17-cv-738-FDW, Doc. 69-E, at *1. Further, due to that inclusion, the Introduction in *HH Franchising* extended onto the second page of the Notice Form. *Compare id. with* Ex. 22.

- 14 -

**WHO CAN JOIN THIS LAWSUIT**

Holley filed this lawsuit on behalf of:

1. herself; and

2. any in-home caregiver employee who is or has been, at any time from December 24, 2014 to the present, employed by Home Helpers in North Carolina.

**YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT**

You may join this lawsuit by completing and sending a signed copy of the attached "Consent to Join" form to Holley's lawyer via e-mail, facsimile or U.S. mail to the following:

**The Law Offices of Michelle Gessner, PLLC**
**ATTN: Home Helpers Unpaid Wage Lawsuit**
**435 East Morehead Street**
**Charlotte, NC 28202**
**Email to: homehelperslawsuit@mgessnerlaw.com**

If you choose to join the lawsuit, this form must be returned on or before [Date to Be Inserted _____, 2018.]

**EFFECT OF JOINING THIS LAWSUIT**

If you choose to join in this lawsuit, you will be bound by the judgment or settlement, whether it is favorable or unfavorable. The attorneys representing you in this lawsuit are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fee. If there is a recovery, the attorneys representing you will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. If you join the lawsuit, you will designate Holley as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Holley's counsel concerning attorney fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreement made and entered into by Holley will be binding on you if you join this lawsuit.

**NO LEGAL EFFECT IN NOT JOINING THIS LAWSUIT**

If you choose not to join this lawsuit, you will not be affected by any judgment or settlement rendered in this case. If you choose not to join in this lawsuit, you are free to file, or not to file, your own lawsuit. The statute of limitations will continue to run on your claim until you join this lawsuit or file your own.

**NO RETALIATION PERMITTED**

If you choose to join this lawsuit, federal law prohibits Defendants from retaliating against you or in any manner discriminating against you because you have done so.

**YOUR LEGAL REPRESENTATIVE IF YOU JOIN THIS LAWSUIT**

If you join this lawsuit, and unless you hire your own independent attorney, counsel for Holley listed below will represent your interests:

THE LAW OFFICES OF MICHELLE GESSNER, PLLC
435 East Morehead Street
Charlotte, NC 28202
Phone: (704) 234-7442
Email to: michelle@mgessnerlaw.com

**FURTHER INFORMATION**

Further information about the lawsuit or this notice may be obtained by contacting Holley's attorney at either of the addresses or phone numbers provided above.

**\*You must timely return this form to preserve your rights.\***

---

**WHO CAN JOIN THIS LAWSUIT**

Mr. Thompson filed this lawsuit on behalf of:

1. himself; and

2. any current or former employees of ASAP who is or has been, at any time from March 14, 2016 to the present, paid the same hourly rate for all hours worked (straight time for overtime).

**YOUR RIGHT TO PARTICIPATE IN THIS LAWSUIT**

You may join this lawsuit by completing and sending a signed copy of the attached "Consent to Join" form to Mr. Thompson's lawyer via email, fax, or U.S. mail to the following:

**Josephson Dunlap**
**ATTN: ASAP Unpaid Wage Lawsuit**
**11 Greenway Plaza, Suite 3050**
**Houston, Texas 77046**
**Telephone: (888) 992-2990**
**Fax: (713) 352-3300**
**Email: info@mybackwages.com**

If you choose to join the lawsuit, this form must be return on or before [DATE TO BE INSERTED_____, 2020].

**EFFECT OF JOINING THIS LAWSUIT**

If you choose to join this lawsuit, you will be bound by the judgment or settlement, whether it is favorable or unfavorable. The attorneys representing you in this lawsuit are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fees. If there is a recovery, the attorneys representing you will receive a part of any settlement obtained or money judgment entered in favor of all members of the class. If you join the lawsuit, you will designate Mr. Thompson as your agent to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Mr. Thompson's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreement made and entered into by Mr. Thompson will be binding on you if you join this lawsuit.

**NO LEGAL EFFECT IN NOT JOINING THIS LAWSUIT**

If you choose not to join this lawsuit, you will not be affected by any judgment or settlement rendered in this case. If you choose not to join in this lawsuit, you are free to file, or not to file, your own lawsuit. The statute of limitations will continue to run on your claim until you join this lawsuit or file your own.

**NO RETALIATION PERMITTED**

If you choose to join this lawsuit, federal law prohibits ASAP from retaliating against you or in any manner discriminating against you because you have done so.

**YOUR LEGAL REPRESENTATIVE IF YOU JOIN THIS LAWSUIT**

If you join this lawsuit, and unless you hire your own independent attorney, counsel for Mr. Thompson listed below will represent your interests:

Andrew W. Dunlap          Christopher Strianese
Richard M. Schreiber      Tamara Huckert
**JOSEPHSON DUNLAP LLP**   **STRIANESE HUCKERT, LLP**
11 Greenway Plaza, Suite 3050    3501 Monroe Rd.
Houston, Texas 77046      Charlotte, NC 28205
Tel: (888)992-2990        Tel: 704-966-2101
Fax: (713) 325-3300
Email: info@mybackwages.com

**FURTHER INFORMATION**

Further information about the lawsuit or this Notice may be obtained by contacting Mr. Thompson's attorneys at either of the addresses or phone numbers provided above.

**\*You must timely return this form to preserve your rights.\***

---

*Compare H.H. Franchising Sys., Inc.*, No. 3:17-cv-738-FDW, Doc. 69-E *with* Ex. 22.

- 15 -

Further, Thompson requests the Court apply its own precedent and allow notice to be sent to these workers one time via First Class U.S. Mail. *See, e.g., id.* at *5 (allowing notice to be sent by First Class Mail); *Moseman*, No. 3:17-cv-481-FDW-DCK, Doc. 33, at *4 (same). Finally, Thompson proposes the Court allow an opt-in period of 60-days

## D.   CONCLUSION

For the foregoing reasons, Thompson has satisfied his burden of demonstrating ASAP subjected him and similarly-situated employees to a "common policy"—straight time for overtime— and, therefore, the Court should grant Thompson's Motion, order ASAP to produce contact information for these workers, and authorize Thompson to send them notice of their right to join this action via First Class Mail utilizing the proposed Notice and Consent Forms attached as Exhibits 22 and 23.

**Dated: December 13, 2019**                    Respectfully submitted,

**JOSEPHSON DUNLAP, LLP**

By: */s/ Andrew W. Dunlap*
    **Andrew W. Dunlap**
    State Bar No. 24078444
    *(admitted pro hac vice)*
    **Richard M. Schreiber**
    State Bar No. 24056278
    *(admitted pro hac vice)*
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    rschreiber@mybackwages.com
    adunlap@mybackwages.com

    **AND**

    **Christopher Strianese,** NC Bar No. 46918
    **Tamara Huckert,** NC Bar No. 35348

- 16 -

3501 Monroe Rd.
Charlotte, NC 28205
Tel: 704-966-2101
chris@strilaw.com
tamara@strilaw.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On December 13, 2019, I served this document on all parties and/or their counsel of record via the Court's ECF System in accordance with the Federal Rules of Civil Procedure.

*/s/ Andrew W. Dunlap*
**ANDREW W. DUNLAP**

## CERTIFICATE OF CONFERENCE

Prior to filing this Instant Motion, Thompson's Counsel conferred with ASAP's Counsel regarding the relief requested herein. ASAP's Counsel indicated that ASAP is opposed to the requested relief.

*/s/ Richard M. Schreiber*
**RICHARD M. SCHREIBER**

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing brief complies with the Court's word limitations.

*/s/ Andrew W. Dunlap*
**ANDREW W. DUNLAP**

- 17 -